THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| EMILY ANDERSEN and SARAH WESTON, <br><br> Plaintiffs, <br><br> v. <br><br> MOUNTAIN HEIGHTS ACADEMY, DELAINA TONKS, and GAVIN HUTCHINSON, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [22] DEFENDANTS' MOTION FOR PARTIAL DISMISSAL AND FOR A MORE DEFINITE STATEMENT** <br><br> Case No. 2:24-cv-00168 <br><br> District Judge David Barlow |

Defendants Mountain Heights Academy ("MHA"), Delaina Tonks ("Ms. Tonks"), and Gavin Hutchinson ("Mr. Hutchinson") (collectively "Defendants") move to partially dismiss the complaint brought by Emily Andersen ("Ms. Andersen") and Sarah Weston ("Ms. Weston") (together "Plaintiffs").[1] Defendants also move for a more definite statement on Plaintiffs' fifth cause of action.[2] For the reasons stated below, Defendants' motion is denied.

## BACKGROUND

This lawsuit stems from MHA's termination of Plaintiffs in August 2023.[3] MHA is a publicly-funded online charter school.[4] Ms. Weston was initially hired by MHA to teach math in

---

[1] Amended Complaint ("Am. Compl."), ECF No. 2-3, filed Mar. 1, 2024.
[2] Motion to Dismiss and Memorandum in Support ("MTD"), ECF No. 22, filed Aug. 13, 2024.
[3] The court recites the factual allegations contained in the Amended Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("a judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint") (citations omitted).
[4] Am. Compl. at ¶ 3.

2009, but was gradually promoted and by 2020 was MHA's Director of Instruction and Technology.[5] Ms. Anderson was hired by MHA as an English teacher in 2010, but was also promoted several times to her final position as School Director.[6] Plaintiffs received positive feedback for their work at MHA and received salary increases and bonuses consistent with their increased job responsibilities.[7]

Ms. Tonks was MHA's Executive Director and Plaintiffs' direct supervisor.[8] Plaintiffs allege Ms. Tonks engaged in unethical behavior, including using MHA funds for personal travel, taking days off work in violation of MHA policy, creating a hostile work environment, failing to perform her duties, and giving herself a salary that was incommensurate with her role at MHA.[9]

Plaintiffs' allegations center on Ms. Tonks hiring her daughter, Ms. Lyons, to work for MHA in 2020.[10] Ms. Lyons's employment was approved by the MHA Board and Mr. Hutchinson, the Chairman of the Board.[11] Ms. Lyons was hired to work in MHA's middle school special education department as the "Para Coordinator," where she would assist the special education program by creating training materials and supervising paraeducators.[12] Ms. Lyons did not have teaching credentials and was not licensed to work in special education when she was hired.[13] Ms. Andersen was Ms. Lyons's direct supervisor in this position, as she had oversight of

---

[5] Id. at ¶ 10.
[6] Id. at ¶ 11.
[7] Id. at ¶ 14–16.
[8] Id. at ¶ 20.
[9] Id. at ¶ 21.
[10] Id. at ¶ 23.
[11] Id.
[12] Id. at ¶ 27–28.
[13] Id.

the special education department.[14] Plaintiffs allege that Ms. Lyons was given preferential treatment by MHA, Ms. Tonks, Mr. Hutchinson, and other MHA staff.[15]

On October 27, 2022, Ms. Anderson reported Ms. Tonks and Ms. Lyons to Mr. Hutchinson for violations of MHA's policy forbidding faculty from residing outside the state of Utah.[16] Mr. Hutchinson did not raise this matter to MHA's board.[17] In December 2022, MHA's board changed its policy to allow all employees to work from out of state.[18]

On January 25, 2023, Ms. Weston met with Ms. Tonks to discuss the perceived favoritism for Ms. Lyons.[19] Although Ms. Tonks allegedly admitted to wrongdoing, she "refused to stop giving Lyons preferential treatment and indicated that Weston needed to let it go."[20] Ms. Weston then sent a formal grievance to MHA's board reporting ongoing policy violations and the favoritism of Ms. Lyons.[21] Ms. Weston also reported that she felt Ms. Tonks was threatening her job in retaliation for reporting these violations.[22]

Then, on January 31, 2023, Ms. Andersen met with Ms. Tonks to discuss whether Ms. Andersen was going to report the alleged policy violations to the MHA Board.[23] At this meeting, Ms. Tonks stated that if Ms. Andersen made any reports, Ms. Tonks would terminate Ms.

---

[14] *Id.*
[15] *Id.* at ¶ 32.
[16] *Id.* at ¶ 33.
[17] *Id.* at ¶ 36.
[18] *Id.* at ¶ 37.
[19] *Id.* at ¶ 41.
[20] *Id.* at ¶ 42.
[21] *Id.* at ¶ 44.
[22] *Id.* at ¶ 44.
[23] *Id.* at ¶ 47.

Andersen from her position at MHA.[24] Shortly thereafter, Ms. Tonks removed Ms. Andersen from oversight of the special education department.[25]

On February 1, 2023, Ms. Andersen reported Ms. Tonks's alleged policy violations and other unethical conduct to the MHA board.[26] Ms. Andersen then reported Ms. Tonks's decision to remove her from overseeing the special education department to the MHA Board, however, the Board did not take any action on this report.[27]

On March 1, 2023, Ms. Weston filed a complaint with the Utah State Board of Education Internal Audit and the State Charter School Board.[28] The complaint reported Ms. Tonks's alleged violations of MHA policy and other legal violations, centering on her preferential treatment of Ms. Lyons.[29] The same day, Ms. Andersen filed an additional complaint with the MHA board reporting Ms. Tonks.[30] Around this time, Ms. Tonks began making allegations of insubordination against Ms. Andersen and Ms. Weston.[31]

On April 6, 2023, Mr. Hutchinson and MHA placed Plaintiffs on administrative leave without reason and ordered Plaintiffs not to have any contact with MHA students, parents, or employees.[32] On April 11, 2023, Ms. Andersen made a formal complaint with the MHA Board reporting additional wrongdoing by Ms. Tonks.[33] The same week, Ms. Weston filed a complaint alleging wrongdoing by Ms. Tonks with the MHA board and the State Charter School Board.[34]

---

[24] *Id.*
[25] *Id.* at ¶ 48.
[26] *Id.* at ¶ 49.
[27] *Id.* at ¶ 51.
[28] *Id.* at ¶ 52.
[29] *Id.*
[30] *Id.* at ¶ 53.
[31] *Id.* at ¶ 54–58.
[32] *Id.* at ¶ 59.
[33] *Id.* at ¶ 64.
[34] *Id.* at ¶ 66–68.

On April 25, 2023, MHA hired an investigator to look into Plaintiffs' allegations against Ms. Tonks and Ms. Tonks's allegations against Plaintiffs.[35] Plaintiffs allege that MHA planned on terminating them regardless of the outcome of this investigation.[36] On August 18, 2023, MHA terminated Plaintiffs, effective August 31, 2023.[37] Plaintiffs allege they were only paid until August 25, 2023.[38]

Plaintiffs filed suit in Utah state court on December 21, 2023,[39] and Defendants removed to this court on March 1, 2024.[40] Plaintiffs assert five causes of action, including two federal claims and three state law claims. Plaintiffs seek reinstatement to their previous positions with MHA and damages. Defendants filed their Motion for Partial Dismissal and for a More Definite Statement on August 13, 2024.[41] Plaintiffs filed their opposition on September 13, 2024,[42] and Defendants filed their reply on September 27, 2024.[43]

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss any claim for "failure to state a claim upon which relief can be granted."[44] "To survive a motion to dismiss, the complaint must allege sufficient facts to state a claim for relief plausible on its face."[45] A claim is

---

[35] *Id.* at ¶ 69–71.
[36] *Id.* at ¶ 74.
[37] *Id.* at ¶ 79.
[38] *Id.* at ¶ 83–84.
[39] Complaint, ECF No. 2-2, filed Mar. 1, 2024.
[40] Notice of Removal, ECF No. 2, filed Mar. 1, 2024.
[41] Motion to Dismiss and Memorandum in Support ("MTD"), ECF No. 22, filed Aug. 13, 2024.
[42] Plaintiffs' Opposition to Defendants' Motion for Partial Dismissal and for a More Definite Statement ("Opp."), ECF No. 26, filed Sep. 13, 2024.
[43] Defendants' Reply Memorandum in Support of Motion for Partial Dismissal and for a More Definite Statement ("Reply"), ECF No. 27, filed Sep. 27, 2024.
[44] Fed. R. Civ. P. 12(b)(6).
[45] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

5

plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged."[46] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[47]

## DISCUSSION

Plaintiffs' Amended Complaint alleges five causes of action. First, Defendants' motion to dismiss the state law claims for whistleblower retaliation and breach of contract and the covenant of good faith and fair dealing are evaluated. Then, the two federal law claims are addressed. Finally, the court considers Defendants' motion for a more definite statement on Plaintiffs' final claim for failure to pay wages.

### I.   State Law Claims

Defendants move for partial summary judgment on Plaintiffs' first state law claim, arguing Utah's whistleblower protection statute does not apply to Ms. Tonks and Mr. Hutchinson without arguing the claim should be dismissed against MHA. Next, they argue the breach of contract claim should be dismissed because there was no actual or implied contract between the parties. The court addresses each in turn.

#### a.  Whistleblower Retaliation

In their first state law claim, Plaintiffs allege that all Defendants violated the Utah Protection of Public Employees Act (the "UPPEA"). The UPPEA prohibits government

---

[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).
[47] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (cleaned up).

employers from taking "retaliatory action against an employee because the employee. . . communicates in good faith. . . the waste or misuse of public funds, property or manpower. . . a violation or suspected violation of a law [or]. . . gross mismanagement; abuse of authority; or unethical conduct."[48] "To plead a claim under this Act, [a] Plaintiff must show that (1) he communicated in good faith the existence of waste of public funds, property, or manpower or a violation of law or regulation and (2) his employer took an adverse employment action against him because of said communication."[49] The Act defines an "employer" as "the public body or public entity that employs the employee," including "an agent of an employer."[50]

Defendants argue the whistleblower retaliation claim against Ms. Tonks and Mr. Hutchinson should be dismissed because the individual Defendants are not an "employer" under the UPPEA.[51] However, they do not dispute that Ms. Tonks and Mr. Hutchinson were agents of MHA.[52] As noted earlier, the UPPEA includes "agents of an employer" in its definition of employer.[53] Therefore, a plain reading of the statute allows for MHA and its agents, which may include Ms. Tonks and Mr. Hutchinson, to be held liable for whistleblower retaliation.[54] Defendants' comparison to other statutory schemes, including the False Claims Act and Title VII,

---

[48] Utah Code Ann. § 67-21-3(1)(a)).

[49] *Ostler v. Salt Lake City Corp.*, No. 2:04-cv-627 TS, 2005 WL 2237631, at *3 (D. Utah 2005), *aff'd sub nom. Ostler v. Anderson*, 200 F. App'x 750 (10th Cir. 2006) (unpublished) (citing Utah Code Ann. § 67-21-3) (noting that "the Act allows for a cause of action only against the employer. . . and not against any of the individual Defendants" without addressing whether individual defendants could be agents of employer).

[50] Utah Code Ann. § 67-21-2(5); *see also Ivie v. Hickman*, 2004 UT App 469, ¶ 11, 105 P.3d 946, 948 (analyzing whether individual defendants were agents of employer under UPPEA).

[51] MTD 9.

[52] Reply 2.

[53] Utah Code Ann. § 67-21-2 (5)(b).

[54] *Navajo Nation v. Dalley*, 896 F.3d 1196, 1208 (10th Cir. 2018) (quoting *United States v. Nichols*, 184 F.3d 1169, 1171 (10th Cir. 1999)) ("Where a statute is clear on its face, we give its words literal effect."); *Fish v. Kobach*, 840 F.3d 710, 741 (10th Cir. 2016) (quoting *U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (in interpreting statutory provision, courts must "account for a statute's full text, language as well as punctuation, structure, and subject matter.").

7

are unavailing. Even if some federal statutes do not allow plaintiffs to bring claims against an employer's agents, this does not alter the definitions included in the UPPEA. Defendants also contend that "the UPPEA's definition of 'employer' seems most likely to be an effort to incorporate *respondeat superior* liability into the statute rather than to create a private right of action against a supervisor in his individual capacity." That reading is possible, but it is insufficiently supported for the court to adopt it.

Defendants also argue that UPPEA remedial provisions show a legislative intent to allow claims only against an employer as an entity.[55] They argue that because the Act has separate provisions for civil fines against "a person" and for other remedies, the legislature did not intend for individuals to be held liable under the Act. Plaintiffs disagree with this construction, arguing instead that UPPEA's civil fine section displays a legislative intent for the Act to apply to individuals like Ms. Tonks and Mr. Hutchinson.[56]

The UPPEA allows for remedies including injunctive relief and damages.[57] The UPPEA's civil fine section states that "[a] person who violates this chapter is liable for a civil fine of not more than $500."[58] The legislature's inclusion of a separate civil fine provision does not establish that agents cannot be held liable under the Act. Adding the civil fine provision to hold individuals accountable, as opposed to the public body that took a retaliatory action, shows a legislative intent for personal liability, at least up to the $500 maximum fine set forth in § 67-21-6. Therefore, the UPPEA may apply to Ms. Tonks and Mr. Hutchinson as agents of MHA, and Plaintiffs' claims against them should not be dismissed.

---

[55] MTD 12.
[56] Reply 5.
[57] Utah Code Ann. § 67-21-4 (1)(a).
[58] Utah Code Ann. § 67-21-6 (1)(a).

**b.  Breach of Contract and the Covenant of Good Faith and Fair Dealing**

In their second cause of action, Plaintiffs allege that MHA breached their employment contracts by failing to follow its policies and eventually terminating them.[59] Plaintiffs assert they had a justified expectation that MHA would follow its policies, including its Travel Request Policy, Working from Out-of-State and work from home policies, Grievance Policy, and Termination Stats & Protocols (the "TSP").[60] Defendants argue this claim fails because Plaintiffs' employment contracts were at-will and because MHA's policies did not constitute a contract.[61]

"Under Utah law, employment contracts of indefinite duration are subject to an at-will presumption that can be rebutted by, among other things, evidence of an implied or express agreement that the employment could only be terminated upon satisfaction of an agreed-upon condition."[62] "[A]n implied contract may 'arise from a variety of sources, including the conduct of the parties, announced personnel policies, practices of that particular trade or industry, or other circumstances."[63] "Although the existence of an implied contract is a factual question, 'the court retains the power to decide whether, as a matter of law, a reasonable jury could find that an implied contract exists.'"[64]

---

[59] Am. Compl. 21–23.
[60] *Id.*
[61] MTD 12–16.
[62] *Glacier Land Co. v. Claudia Klawe & Assocs., L.L.C.*, 2006 UT App 516, ¶ 38, 154 P.3d 852, 867.
[63] *Canfield v. Layton City*, 2005 UT 60, ¶ 17, 122 P.3d 622, 626 (emphasis omitted) (quoting *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1044 (Utah 1989)) (government entities personnel policy may create reasonable expectation in employees that employer will conform to the procedures it outlines).
[64] *Lopez v. Admin. Off. of the Cts.*, No. 2:07-CV-571, 2011 WL 5320980, at *3 (D. Utah 2011), *aff'd sub nom. Lopez v. Admin. Off. of Cts.*, 719 F.3d 1178 (10th Cir. 2013) (quoting *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 304 (Utah 1992)).

"[A] clear and conspicuous disclaimer, as a matter of law, prevents employee manuals or other like materials from being considered as implied-in-fact contract terms."[65] However, an implied contract may exist if a disclaimer is unclear or limited in scope.[66] Furthermore, "circumstances may exist where 'the government voluntarily undertakes an additional duty' beyond its normal obligation to the employee, 'in which case an implied contract arises.'"[67]

Defendants argue there is no enforceable contract because Plaintiffs' Term Sheets stated that their employment was at-will and did not mention MHA policies or procedures.[68] Defendants also argue that MHA's policy guide contained a clear and conspicuous disclaimer, so any employee manuals or similar materials cannot form an implied contract.[69] Plaintiffs respond that they had an implied contract that altered their at-will status based on Defendants' policies.[70] Their argument focuses on the TSP, which states that:

> We also understand that we live in a right-to-work state and that some of the language from our employee agreements causes some angst, such as the school having the right to terminate for no reason or any reason. Those are boilerplate legal phrases used in agreements in right-to-work states. Just because it says that in your agreement does not mean that we don't work hard to hire well up front, provide resources and mentoring for current employees, and support struggling employees with additional interventions and opportunities to improve prior to considering termination, unless the employee does something egregious.[71]

---

[65] *Cabaness v. Thomas*, 2010 UT 23, ¶ 58, 232 P.3d 486, 503, *abrogated on other grounds by Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, ¶ 58, 424 P.3d 897.

[66] *Id.*

[67] *Canfield v. Layton City*, 2005 UT 60, ¶ 16, 122 P.3d 622, 626 (quoting *Buckner v. Kennard*, 2004 UT 78, ¶ 32, 99 P.3d 842, 850).

[68] MTD 13.

[69] MTD 14. Defendants have attached copies of these policies to its Motion to Dismiss. These policies are central to Plaintiffs' claims, and the parties have not disputed their authenticity. Therefore, the court considers the documents as referred to in the Amended Complaint. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

[70] Opp. 8–9.

[71] Termination Stats & Protocol, ECF No. 22-7, filed Aug. 13, 2024.

The TSP goes on to state that if an employee "is struggling to meet basic job performance expectations" MHA "will" provide a corrective action plan, including training and other support.[72] Plaintiffs allege this language modified their at-will status and guaranteed procedures they did not receive before their termination.

MHA's statements in the TSP may demonstrate that it voluntarily assumed additional duties upon which Plaintiffs may have relied. It states that MHA will follow certain procedures and seemingly deemphasizes employees' at-will status. The TSP states that employees will receive support unless they do something "egregious." Based on this language, a reasonable jury could find that MHA agreed to take on further responsibilities, creating an implied contract. Therefore, Plaintiffs have stated a plausible breach of contract claim, and Defendants' motion to dismiss this cause of action is denied.

## II.   Federal Claims

Plaintiffs' two federal claims are brought under § 1983, alleging that Defendants violated their rights under the First and Fourteenth Amendments to the United States Constitution.[73] Section 1983 provides a civil action against every "person" who deprives another person of their rights.[74] Defendants argue the federal claims should be dismissed because Plaintiffs did not have a protected property interest, the Amended Complaint does not meet § 1983 pleading standards, and Plaintiffs fail to allege an official custom or policy. The court evaluates each argument in turn.

---

[72] *Id.*
[73] Am. Compl. 23–26.
[74] 42 U.S.C. § 1983.

### c. Due Process

Plaintiffs argue they had a property interest in their employment at MHA that was violated when they were terminated from their positions.[75] Defendants argue that Plaintiffs did not possess a protected property interest to which due process applies, so the claims should be dismissed.[76]

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."[77] "In the employment context, a property interest is a 'legitimate expectation in continued employment.'"[78] "In general, we look to state law to determine whether a property interest in employment exists."[79] "Such an interest can arise from 'state statutes, regulations, municipal ordinances, university rules, and even express or implied contracts.'"[80]

Defendants argue that because Plaintiffs' employment was at-will, they did not have a protected property interest and their due process claim fails at the first step.[81] Plaintiffs respond that "the at-will nature of their employment had been altered by internal policies and the conduct of the parties, creating an implied employment contract."[82]

---

[75] Am. Compl. 23.
[76] MTD 16–17.
[77] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007) (quoting *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004)).
[78] *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1245 (10th Cir. 2008) (quoting *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000)).
[79] *Id.* (citing *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000)).
[80] *Id.* (quoting *Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995)).
[81] *Id.*
[82] Reply 9.

Although Utah courts presume employment relationships are at-will, employees may overcome this presumption by showing that the parties expressly or impliedly intended to change their at-will status.[83] An implied employment contract "can be demonstrated by 'the conduct of the parties, announced personnel policies, practices of that particular trade or industry, or other circumstances which show the existence of such a promise.'"[84] Often, "[t]he determination of whether an implied-in-fact promise to terminate for cause is a question of fact for the jury, with the employee bearing the burden of proof."[85]

As discussed above, Plaintiffs have alleged facts that make it plausible they had a legitimate expectation of continued employment at MHA. Plaintiffs state that they signed employment contracts every year and that "it was stated and understood that as long as they performed the duties of the job their contract would be renewed."[86] Plaintiffs also allege that they were promised and understood that MHA would follow termination procedures in the TSP, which were not adhered to in their termination proceedings.[87] Based on the facts alleged, Plaintiffs may be able to establish they had a property interest in continued employment based on an implied contract with MHA. Therefore, Defendants' motion to dismiss Plaintiffs' due process claim is denied.

---

[83] *Simmons v. Uintah Health Care Special Serv. Dist.*, 364 F. App'x 507, 515 (10th Cir. 2010) (unpublished); *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1044 (Utah 1989) ("An employee may demonstrate that his at-will termination breached an express or implied agreement with the employer to terminate him for cause alone.")
[84] *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1132 (10th Cir. 2001) (quoting *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1044 (Utah 1989)).
[85] *Id.*
[86] Am. Compl. ¶ 12.
[87] *Id.* ¶¶ 13, 112.

13

### d. Pleading Standard

Defendants argue both federal claims fail to meet the pleading requirements for § 1983 claims because the Amended Complaint's allegations lack an affirmative link between Ms. Tonks, Mr. Hutchinson, and the allegedly unconstitutional conduct.[88] Plaintiffs respond that they have pled sufficiently specific actions taken by Ms. Tonks and Mr. Hutchinson to provide Defendants with the basis for the claims asserted against them.[89]

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."[90] "[T]here must be 'an affirmative link. . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.'"[91] Additionally, "in a § 1983 action it is particularly important that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."[92] "[T]he burden rests upon the plaintiffs to provide fair notice of the grounds for the claim made against each of the defendants."[93]

Plaintiffs allege that Ms. Tonks manufactured complaints against them and solicited another MHA employee to make a formal complaint against Ms. Andersen.[94] They also claim

---

[88] MTD 17.
[89] Opp. 11.
[90] *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)).
[91] *Sanaah v. Howell*, 384 F. App'x 737, 740 (10th Cir. 2010) (unpublished) (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).
[92] *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)) (internal quotation marks omitted) (italics in original).
[93] *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (use of collective term "Defendants" or "list of the defendants named individually but with no distinction as to what acts are attributable to whom" failed to satisfy fair notice standard).
[94] Am. Compl. ¶¶ 54, 58.

14

that Ms. Tonks outsourced Ms. Weston's job duties before the investigation into their conduct was complete and failed to send them contract renewal offers.[95] Plaintiffs further allege that in April 2023, Mr. Hutchinson and MHA placed them on administrative leave without providing reasons for the leave and ordered Plaintiffs not to communicate with MHA students, families, or staff.[96] They also state that all Defendants failed to provide them with any means to appeal the leave, manufactured reasons for their termination, and eventually terminated them from their positions at MHA.[97] These allegations provide sufficient detail for Defendants to respond to the due process claim.

Similarly, the free speech claim sufficiently alleges in what conduct each Defendant engaged. Plaintiffs claim that Defendants terminated their employment because of their speech.[98] They allege Ms. Tonks threatened Ms. Andersen that if she reported policy violations, she would have Ms. Andersen terminated.[99] They allege that MHA expressly stated that it was terminating Plaintiffs for statements they made in their reports about Ms. Tonks.[100] Plaintiffs also allege that Mr. Hutchinson was an official with final policymaking authority who used that authority to terminate Plaintiffs based on statements they made.[101]

In short, these are not summary allegations against a large group of defendants such that no individual can adequately respond.[102] Plaintiffs have provided sufficient factual allegations so

---

[95] Am. Compl. ¶¶ 75, 76.
[96] *Id.* ¶ 59.
[97] *Id.* ¶ 113–115.
[98] *Id.* ¶ 128.
[99] *Id.* ¶ 47.
[100] *Id.* ¶ 82.
[101] *Id.* ¶ 129.
[102] *See Tufaro v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 107 F.4th 1121, 1136 (10th Cir. 2024) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)) ("[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants.")

that MHA, Mr. Hutchinson, and Ms. Tonks can understand their role in the alleged constitutional

violations. Therefore, Plaintiffs have met the pleading requirements for their § 1983 claims and

Defendants' motion to dismiss cannot be granted on this basis.

### e. Official Custom or Policy

Finally, Defendants argue that the federal claims should be dismissed because the

Amended Complaint does not allege that a custom or policy of MHA caused the alleged

constitutional violations.[103] Plaintiffs respond that Mr. Hutchinson and Ms. Tonks were officials

with final policymaking authority and that MHA ratified their decisions, which sufficiently

pleads an official custom or policy.[104]

Under *Monell v. Department of Social Services*,[105] a plaintiff "may sue local governing

bodies directly for constitutional violations pursuant to the body's policies."[106] "[T]he

government as an entity may only be held liable when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury."[107] "To establish municipal liability, a plaintiff must

first demonstrate a 'municipal policy or custom', which may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom
> amounting to a widespread practice that, although not authorized by
> written law or express municipal policy, is so permanent and well
> settled as to constitute a custom or usage with the force of law; (3)
> the decisions of employees with final policymaking authority; (4)
> the ratification by such final policymakers of the decisions—and the
> basis for them—of subordinates to whom authority was delegated
> subject to these policymakers' review and approval; or (5) the failure

---

[103] MTD 20–21.
[104] Reply 12–13.
[105] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).
[106] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023).
[107] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell*, 426 U.S. at 694)
(internal quotation marks omitted).

to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused."[108]

Plaintiffs rely on the third and fourth bases for municipal liability, alleging Mr. Hutchinson and Ms. Tonks made the decision to violate their rights as employees with final policymaking authority.[109] They further claim that MHA ratified these decisions.[110] Therefore, Plaintiffs have adequately pleaded an official custom or policy, and their federal claims should not be dismissed.

## III.    Motion for a More Definite Statement

In their final state law cause of action, Plaintiffs claim MHA failed to them pay wages from August 25–31, 2023. Defendants do not move to dismiss this claim but ask the court to order a more definite statement.[111] Plaintiffs argue that the allegations in the Amended Complaint are sufficiently detailed and do not require additional information for Defendants to be able to respond.[112]

Under Federal Rule of Civil Procedure 12(e), a party may move for a more definite statement if a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response."[113] "Rule 12(e) motions are generally disfavored by the courts and are properly granted only when a party is unable to determine the issues to which a response is required."[114]

---

[108] *Id.* (quoting *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)).
[109] Reply 12; *see also* Am. Compl. ¶¶ 129, 130, 131.
[110] *Id.* (citing Am. Compl. ¶¶ 116, 118, 119).
[111] MTD 21.
[112] Reply 14.
[113] Fed. R. Civ. P. 12 (e).
[114] *Swig Holdings, LLC v. Sodalicious, Inc.*, No. 2:15-cv-307-DAK, 2015 WL 5999896, at *1 (D. Utah 2015) (quoting *Creamer v. Ellis Cnty. Sheriff Dep't*, No. 08-4126-JAR, 2009 WL 484491, at *1 (D. Kan. 2009)).

The Rule "is designed to correct pleadings that are unintelligible not merely to correct a claimed lack of detail."[115]

Defendants do not argue that the failure to pay wages claim is unintelligible. Instead, they argue that Plaintiffs have not stated whether they are "entitled to recovery under a theory of breach of contract, a violation of a state or federal statute, or some other legal theory."[116] However, Plaintiffs have stated the alleged dates MHA failed to pay them for and the amounts they claim they are owed.[117] The allegations in the Amended Complaint are not so unintelligible that Defendants cannot respond to them. Accordingly, Defendants' motion for a more definite statement is denied.

## ORDER

Defendants' Motion for Partial Dismissal and for a More Definite Statement is DENIED.[118]

Signed December 17, 2024.

BY THE COURT

_____

David Barlow
United States District Judge

---

[115] *Id.*
[116] MTD 21.
[117] Am. Compl. 26.
[118] ECF No. 22.